# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | Case No. 2:15-cv-01420-APG-CWH |
| Plaintiff, | **ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |
| v. | (ECF Nos. 31, 36) |
| AMICA MUTUAL INSURANCE COMPANY, | |
| Defendants. | |

Plaintiff Travelers Property Casualty Company of America paid out nearly one million dollars from its insurance policy in an auto-accident case. It brings this lawsuit believing that defendant Amica Mutual Insurance Company issued a policy that also covered the accident, and that Amica and Travelers should split the bill. Travelers moves for summary judgment on its equitable contribution claim, and Amica cross-moves for summary judgment that Travelers's claim fails.

This dispute concerns whether a single term in Travelers's policy is triggered. The term states that Travelers is the primary insurer (so that Amica is off the hook) if the insured enters into an "insured contract" with another party. There is evidence in the record suggesting that Travelers's insured, Huron Consulting, agreed with its employees that the employees were not to buy insurance when they rented cars, and that Huron would assume liability for covering any damages resulting from a car accident. But a reasonable factfinder could find that Huron did not agree to assume the liability at issue in this case. There is thus a triable issue of fact as to whether Travelers's "insured contract" provision is triggered. Because both motions hinge on whether this provision applies, I deny both.

I.      **BACKGROUND**

A.      **Project Sam and the car accident**

Travelers insured Huron with a commercial automobile policy.  Steven Barr worked for Huron.  In late 2009, Huron sent Barr to Las Vegas to consult on a program called Project Sam. Huron gave Barr detailed travel instructions for this trip in an orientation packet.[1]  The packet included a number of directives about how consultants like Barr should arrange for their airfare, rental cars, and hotel stays.  For example, it was "mandatory" that consultants book their airfare through Huron's partner website.  For rental cars, the packet stated in bold type: "\*\*\*Insurance coverage IS included with ALL business car rentals – DO NOT purchase additional insurance upon renting the vehicle \*\*\*."[2]

Barr arrived in Las Vegas and rented a Nissan Altima from Avis Rent a Car.  While driving the Altima, he allegedly caused an accident that seriously injured another driver.  Avis and Travelers settled with the other driver for $1 million—$900,000 of which Travelers paid. Travelers then brought this lawsuit seeking contribution from Barr's personal insurance provider, Amica.  Travelers contends that Avis was the primary insurer for the accident, and that Travelers and Amica should split what was left over (the $900,000 that Travelers paid).

B.      **The insurance policies and what they cover**

Both the Travelers and Amica policies state that they provide only excess coverage when their insured is driving someone else's car, such as a rental car.  In other words, both policies will pay out benefits only after all other insurers pay out their benefits (assuming there are losses left over).  Generally, because both policies have this excess-coverage term, the terms would cancel each other out and the insurers would split the losses and pay their share.[3]

The crux of this case is an additional term in Travelers's policy, which Amica believes makes Travelers a primary insurer over this accident (leaving Amica off the hook because its

---

[1] ECF No. 34-2 at 10.

[2] *Id.* at 14.

[3] *California Cas. Indem. Exch. v. Am. Family Mut. Ins. Co.*, 2013 WL 1786576 (D. Nev. Apr. 25, 2013).

1    policy remains excess only).  This term states that Travelers's policy "is primary for any liability

2    assumed under an 'insured contract.'"[4]  An insured contract is defined in the policy to include

3    several types of agreements.  Relevant here, the policy says that an insured contract includes:

4    "That part of any contract or agreement entered into, as part of your business, pertaining to the

5    rental or lease, by you or any of your 'employees,' any 'auto.'"[5]

6    **II.    <u>ANALYSIS</u>**

7        **A.  Summary Judgment**

8        Summary judgment is appropriate when the pleadings, discovery responses, and other

9    offered evidence show "there is no genuine issue as to any material fact and that the movant is

10   entitled to judgment as a matter of law."[6]  When considering summary judgment, I view all facts

11   and draw all inferences in the light most favorable to the non-moving party.[7]

12       If the moving party demonstrates the absence of any genuine issue of material fact, the

13   burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine

14   issue for trial."[8]  The non-moving party "must do more than simply show that there is some

15   metaphysical doubt as to the material facts."[9]  He "must produce specific evidence, through

16   affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a

17   reasonable fact finder could find in her favor.[10]

18   / / / /

19   / / / /

20   / / / /

21

22       [4] ECF No. 32-5.

23       [5] *Id.* at 29.

24       [6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (*citing* Fed. R. Civ. P. 56(c)).

25       [7] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

         [8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

26       [9] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citation omitted).

27       [10] *Bhan v. NME Hosps. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at

28   248–49.

**B. There is a triable issue as to whether Travelers's policy provides primary coverage for Barr's accident.**

The dispute turns on whether Huron's actions triggered the insured-contract term in Travelers's policy. That term triggers if Huron assumed liability pertaining to a rental car in any contract or agreement that is related to Huron's business.[11] Amica contends that Huron entered into such an agreement with Barr and other employees. Amica mainly points to the orientation packet that Huron gave Barr that instructed him: "DO NOT purchase additional insurance upon renting the vehicle" because "[i]nsurance coverage IS included with ALL business car rentals." Amica concludes that by telling Barr not to buy insurance, Huron agreed to assume liability related to Barr's car rental.

Travelers does not dispute that Huron gave Barr the orientation packet as part of its business or that this document relates to renting cars. But it argues that Huron never agreed to anything, and even if it did Huron never assumed any liability as Travelers's policy uses that term.

**1. Whether Huron entered into an agreement with Barr**

First, there is a triable issue of fact whether Huron entered an agreement relating to renting cars, as Travelers's policy requires. Neither party suggests that Travelers's policy gives some special meaning to "agreement." So like any other agreement, the question is whether the parties' objective manifestations reasonably led each other to believe a contract was formed.[12] In Nevada, whether the parties mutually assent to form an agreement is generally a question of fact.[13]

---

[11] ECF No. 32-5 at 29.

[12] *Luckett v. Brother Mfg. Corp.*, 381 P.3d 636 (Nev. 2012) (discussing elements of a valid contract).

[13] *Alter v. Resort Properties of Am.*, 2014 WL 2466282, at *3 (Nev. May 30, 2014) (affirming jury finding of liability for breach of contract because substantial evidence supported mutual assent).

Travelers argues that Huron provided travel recommendations to its employees; it never entered into a binding agreement with them.  But Huron's actions indicate otherwise.[14]  Huron issued a written orientation packet to Barr that stated in bold type that consultants were "NOT" to purchase insurance for "ALL" car rentals and that insurance was already provided.  Barr avers that his understanding of this orientation packet was that Huron agreed to assume liability for all business car rentals.[15]  Barr explains that he was required to comply with the orientation packet as part of his employment with Huron.[16]  And Huron appears to have similarly understood that it assumed responsibility for employees' car rentals, sending an email to Barr after the accident stating that "employees traveling on Huron company business []are covered with car rental insurance under the corporate agreements . . . or under Huron['s] umbrella policy."[17]  Huron's internal travel guidelines also state that it will arrange for insurance coverage for employee car rentals.[18]

Nevada law allows employers and employees to form agreements related to employment—including through handbooks and internal policies[19]—and Travelers offers no authority suggesting that Huron could not agree that it would provide insurance for its employees' car rentals in return for the employees agreeing to not purchase their own.  Because there is evidence from which a reasonable factfinder could find that Huron and Barr had an agreement relating to employee rental cars, Travelers's argument on this point fails.

On the other hand, a reasonable factfinder could instead find that Huron and its employees did not reach an agreement.  Huron's corporate witnesses testified that the orientation packet and

---

[14] Travelers says in its briefing that "nothing in these guidelines suggests the company is attempting to bind its employees."  But the orientation materials use terms including "mandatory" and that employees "must comply" with several terms.  And the term in question is not written to be optional; it states that employees are "NOT" to buy insurance for "ALL" rentals.

[15] ECF No. 34-2 at 3.

[16] *Id.*

[17] ECF No. 34-2.

[18] ECF No. 34-8.

[19] *Am. Bank Stationery v. Farmer*, 799 P.2d 1100, 1102 (Nev. 1990).

1    travel guidelines were merely recommendations for employees to consider when they traveled.[20]

2    And the fact that these documents were given to Barr in the context of an orientation, and not

3    signed by either party, could indicate that they were perhaps not meant to be a binding agreement.

4    Because a reasonable factfinder could disagree about whether Huron entered into a contract with

5    Barr, this point remains an open fact question.

6                    **2.  Whether Huron assumed liability under this potential agreement**

7           Even if a contract was formed, did Huron "assume liability" under that agreement?  The

8    parties dispute what "liability" means in the context of Travelers's policy.  Travelers suggests it

9    means that Huron must have agreed to totally *indemnify* a third party—not just that Huron agreed

10   to purchase insurance for its employees.  Amica contends that assuming liability by promising to

11   purchase insurance is enough.

12          "If a provision in an insurance contract is unambiguous, a court will interpret and enforce

13   it according to the plain and ordinary meaning of its terms."[21]  But where a term is ambiguous, it

14   is generally construed in favor of the insured and against the insurer.[22]  "[W]hether an insurance

15   policy [term] is ambiguous turns on whether it creates reasonable expectations of coverage as

16   drafted."[23]  Interpreting the meaning of contract terms is generally a job for the court.[24]  But when

17   an interpretation turns on underlying factual disputes, those fact questions are submitted to a

18   factfinder.[25]

19          Travelers's policy does not define the term "liability."  Travelers cites authority

20   suggesting that insurers often use this term to refer to indemnification.  But nothing in Travelers's

21   policy suggests that "liability" is narrowly confined to indemnifying third parties.  Indeed, it is

22

23                    [20] ECF No. 34-4.

24                    [21] *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).

25                    [22] *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 604 (Nev. 1992) (stating that ambiguous or unclear terms in an insurance contract are resolved in favor of the insured).

26                    [23] *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1157 (Nev. 2004).

27                    [24] *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014).

28                    [25] *Id.*

telling that other terms in the policy expressly refer to "indemnification" while this provision does not. At best, Travelers has shown that this term is ambiguous, and Nevada law requires that I construe ambiguous terms in favor of coverage. Thus, I should interpret "liability" broadly so that it applies not just to strict indemnification agreements, but also to Huron's agreement to purchase insurance for its employees.

But even assuming Travelers is correct that the policy term "liability" requires that Huron agreed to indemnify a third party, the evidence suggests that it did just that. Huron told its employees that they were not to purchase additional insurance for rental cars, and that Huron was purchasing it for them. It was reasonable for Barr to believe that Huron was agreeing to indemnify him for any liability arising from driving rental cars. It is hard to imagine that he could reasonably understand otherwise. If Huron and its employees agreed that employees would not buy additional insurance, and if Travelers is right that Huron never agreed to take on liability itself, then employees were personally liable anytime they rented a car for business. And Barr testified that he understood Huron agreed to be responsible for any liability relating to his rental car.[26]

There is thus evidence that Huron entered into an agreement in which it assumed liability for its employees' rental cars—thereby triggering Travelers policy's insured-contract provision. But as explained above, a reasonable factfinder could also conclude that the Huron and its employees did not enter into a binding agreement. Because neither party has established whether the insured-contract provision is triggered, I deny both motions.

### III.   **<u>CONCLUSION</u>**

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment **(ECF No. 31) is DENIED**.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment **(ECF No. 36) is DENIED**.

---

[26] ECF No. 34-2.

1         IT IS FURTHER ORDERED that the court will hold a scheduling conference on **August**

2    **3, 2017 at 10:30 a.m.** to discuss with the parties the details of the trial of this case, and when a

3    mediation can be scheduled.  In anticipation of that conference, the parties shall confer with their

4    respective witnesses about potential trial dates, and then confer with each other to determine

5    whether some dates are acceptable to both parties.

6         DATED this 14th day of July, 2017.

7    

8                                   ANDREW P. GORDON

                                 UNITED STATES DISTRICT JUDGE